**Stephen E. DUKE, et al., Plaintiffs,**

v.

**TOUCHE ROSS & CO., Defendant.**

No. 90 Civ. 5610 (JFK).

United States District Court, S.D. New York.

May 21, 1991.

Beigel & Sandler, Ltd., New York City (Herbert Beigel, Lewis S. Sandler, Bijan Amini, Philip Fertik, Elizabeth Toll, of counsel), for plaintiffs.

Sidley & Austin, New York City (Steven M. Bierman, James D. Arden, of counsel), Sidley & Austin, Chicago, Ill. (Robert D. McLean, Jeffrey R. Tone, Kate Poverman, of counsel), for defendant.

## OPINION AND ORDER

KEENAN, District Judge:

Defendant Touche Ross & Co. ("Touche")[1] seeks an Order dismissing plaintiffs' complaint on the grounds that it fails to state a claim upon which relief can be granted and that it fails to plead fraud with sufficient particularity. Fed.R.Civ.P. 12(b)(6) and 9(b). Oral argument was heard on March 11, 1991, and decision was reserved.

### FACTS

The Complaint in this action originally was filed in the United States District Court for the Eastern District of Illinois on December 22, 1989. On August 1, 1990, the court granted defendant's motion to transfer the action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). *See* Certified Record Transferred to the United States District Court Southern District of New York. Plaintiffs subsequently filed an amended complaint, adding additional plaintiffs.

In 1985, plaintiffs each purchased limited partnership interests in one of two limited partnerships: J & S World Nurseries Limited Partnership ("J & S") and Gateway Nur-

---

**1.** The accounting firms of Deloitte Haskins & Sells and Touche Ross & Co. merged in 1989 to form Deloitte & Touche. The complaint in this action was filed against Touche Ross & Co., however, and the Court will refer to defendant as "Touche."

sery Associates Limited Partnership ("Gateway") (collectively the "Limited Partnerships"). Plaintiffs allege that in purchasing their interests in the Limited Partnerships, they relied upon private placement memoranda ("PPMs"), which were prepared by the defendant, Touche. Plaintiffs allege that they invested for tax benefits and economic profit.

Plaintiffs are eighty individual investors who are domiciled in many different states. Touche is a general partnership of certified public accountants with offices throughout the United States.

Plaintiffs allege that the promoters of the Limited Partnerships engaged in fraudulent schemes. Acting through affiliates, the promoters purchased nursery stock and plant materials (the "nursery stock") from existing nursery operations in serious financial difficulties, paying in cash and notes. The nursery stock then was resold to the Limited Partnerships, with significant step-ups in the prices.

The PPMs represented that investors were likely to receive tax deductions and economic profit, and plaintiffs contend that the PPMs contained false or misleading representations of the value of the nursery stock and did not disclose certain material facts. Plaintiffs allege that Touche failed to disclose that there was no reasonable possibility of economic gain for the limited partners; it was almost impossible for the limited partners to recoup their cash investment or any portion of it; the purchase prices paid by the Limited Partnerships were inflated; and it was unlikely that the revenue generated ever would be sufficient to satisfy the notes for the balance due the original sellers.

Touche prepared two of the documents that are included in the PPMs: a favorable tax opinion (the "tax opinion"); and a financial projections review and report (the "review report") (collectively the "Touche documents"). The complaint states, "Touche knew that the Touche documents would be included in the [PPMs] and would be used to induce investors to purchase limited partnership interests." (Complaint ¶ 8).

Touche is alleged to have practiced before the Internal Revenue Service (the "IRS") at all relevant times. As a practitioner before the IRS, Touche had a duty to comply with regulations governing the conduct of certified public accountants. Treasury Department regulations require practitioners to exercise due diligence with respect to financial forecasts or projections included in offering materials. Touche allegedly did not comply with those regulations. (Complaint ¶ 11).

Plaintiffs allege that Touche knew the following facts: (a) affiliates of the promoters were on an IRS watch list of likely promoters of "abusive" tax shelters; (b) a similar 1984 nursery deal promoted by an affiliate of the promoters was already under examination by the IRS; and (c) an affiliate of the promoters had previously been enjoined from promoting a tax shelter on the ground that it had overvalued the products by more than 200 percent. (Complaint ¶ 12).

Plaintiffs list the reasons that Touche should have known, through the exercise of due diligence, that the sales and earnings projections and assumptions for the Limited Partnerships were unreasonable. (Complaint ¶ 13(a)(i)–(iii)). Further, Touche should have known that the prices paid by the Limited Partnerships and the valuations placed on the nursery stock were unrealistic. (Complaint ¶ 13(b)(i)–(iii)). Nonetheless, Touche adopted the projections prepared by the general partners in their review report. Not only did Touche adopt the projections of the general partners, but it "vouched for the promoters' good faith." (Complaint ¶ 16). Touche failed, however, "to disclose the unreasonableness of the projections, assumptions and valuations." (Complaint ¶ 17).

Plaintiffs allege that the Limited Partnerships each failed and that their investments now are worthless. Further, Touche solicited persons to invest in one or both of the Limited Partnerships. Finally, plaintiffs claim that they did not know and could not have discovered the true facts concerning the nondisclosures prior to December of 1987.

72

In Count I of their complaint, plaintiffs allege that Touche violated Section 10(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder. Count II alleges a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) or (d). Count III alleges a common law claim of negligent misrepresentation.

Defendants contend that plaintiffs knew they were investing in speculative limited partnerships, and that the PPMs described at length the risks involved. Touche's involvement in the offering was limited to expressing an opinion on the tax disclosures in the PPMs and reporting on the promoters' financial projections contained in the PPMs. Defendants contend that plaintiffs' complaint should be dismissed because it is barred by the statute of limitations. In any event, defendants argue that the complaint fails to state a claim under Section 10(b) or RICO and it fails to state a claim for negligent misrepresentation.

DISCUSSION

In considering a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 562 (2d Cir.1985). Moreover, the allegations set forth in the complaint must be accepted as true. *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). In addition, in considering a motion to dismiss for failure to state a claim upon which relief can be granted, dismissal should result only if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). It has been stated that "[h]owever great the odds against a plaintiff's ultimate success, if the complaint states a claim, he is entitled to his day in Court." *Ballan v. Wilfred Am. Educ. Corp.,* 720 F.Supp. 241, 247 (E.D.N.Y.1989) (citing *Index Fund, Inc. v. Hagopian,* 609 F.Supp. 499, 510 (S.D.N.Y.1985)).

Plaintiffs make minor references to the actual language of the PPMs at issue, and defendant contends that this inclusion therefore incorporates the PPMs by reference. Defendant has submitted the PPMs in support of its motion to dismiss the complaint, and plaintiffs oppose this submission. In *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989), the Second Circuit found that the District Court had erred by finding incorporation by reference when the documents discussed in the complaint were not attached as exhibits and were not extensively cited. The Court adhered to the rule that "limited quotation does not constitute incorporation by reference" and faulted the district court with relying in its analysis upon statements from the documents that did not appear in the complaint. The Court finds that in the instant complaint the offering materials are not incorporated by reference, and will not consider the documents attached to defendant's motion in deciding this motion.

I. Statute of Limitations

Defendants first argue that plaintiffs' Section 10(b) claim is barred by the statute of limitations. Plaintiffs allege that they each invested in the Limited Partnerships in 1985. The original complaint was filed on December 22, 1989.

Section 10(b) does not contain a statute of limitations, and most courts have looked to the forum state's cause of action that is most analogous to Section 10(b) in order to borrow the statute of limitations applicable to that state's cause of action. *See IIT v. Cornfeld,* 619 F.2d 909, 928 (2d Cir.1980). Because this action originally was filed in Illinois and was transferred pursuant to 28 U.S.C. § 1404(a), defendants argue that the law of the transferor forum should apply. *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820–21, 11 L.Ed.2d 945 (1964).

Defendant points out that on July 30, 1990, the Seventh Circuit held that Section 13 of the Securities Act of 1933, rather than state law, provides the appropriate analogy from which to determine the stat-

ute of limitations for Section 10(b) claims. *Short v. Belleville Shoe Manufacturing Co.*, 908 F.2d 1385 (7th Cir.1990). The Second Circuit recently made a similar finding. *See Ceres Partners v. GEL Associates*, 918 F.2d 349 (2d Cir.1990) (following Seventh Circuit in *Short* and Third Circuit in *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.) (en banc), *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988)). Accordingly, the law in the Seventh Circuit now is that a plaintiff has one year from discovery of a cause of action to bring suit, but under no circumstances may he file suit after three years from the date of sale of the securities has elapsed, regardless of when he discovers that he has a cause of action.

Defendant cites two cases in the Second Circuit that applied the law of the transferor forum in securities actions, but each applied the *substantive* law of the transferor forum. *See Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 408 n. 7 (2d Cir.1975); *In re Haven Industries, Inc.*, 462 F.Supp. 172, 179 (S.D.N.Y.1978). The Second Circuit follows the rule that statutes of limitations are *procedural* matters, and therefore the Seventh Circuit's rules concerning time limitations is not applicable to this case. *See, e.g., Singer v. Olympia Brewing Co.*, 878 F.2d 596, 599 (2d Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990); *Metropolitan Securities v. Occidental Petroleum Corp.*, 705 F.Supp. 134, 138 (S.D.N.Y. 1989).

■ In *Welch v. Cadre Capital*, 923 F.2d 989 (2d Cir.1991), the Second Circuit rejected the argument that *Ceres* should be applied retroactively. There is some uncertainty as to whether *Welch* holds that retroactive application of *Ceres* is always to be rejected. *See, e.g., Axel Johnson, Inc. v. Arthur Andersen & Co.*, 762 F.Supp. 599 (S.D.N.Y.1991); (uncertain whether *Welch* "establishes a bright-line rule"); *Solomon v. Scientific American, Inc.*, 1991 WL 35954, 1991 U.S.Dist. LEXIS 2690 (S.D.N.Y. March 7, 1991) (retroactivity determined on case-by-case basis). The Court therefore will examine the instant case pursuant to the standards set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), and examined in *Welch* in the context of retroactive application of *Ceres*.

*Chevron* held that in order for a new rule

> "to qualify for purely prospective application, a judicial decision 'must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.' *Chevron*, 404 U.S. at 106 [92 S.Ct. at 355]. A court should then 'weigh' in each case whether retroactive application would conflict with the purposes of the rule and whether it would produce inequitable results. *Id.* at 106–07 [92 S.Ct. at 355–56]."

*Welch*, 923 F.2d at 993 (footnotes omitted). The Court in *Welch* examined *Ceres* under this test and found that *Ceres* "overrules well-established precedent" and therefore "meets the threshold requirement for nonretroactive application." 923 F.2d at 994. Under New York law, the pre-*Ceres* statute of limitations applicable to securities fraud claims was six years from the commission of the fraud or two years from the discovery. *See Kronfeld v. Advest*, 675 F.Supp. 1449, 1457 n. 19 (S.D.N.Y.1987). In the Seventh Circuit, from which this case was transferred, the one-year/three-year formulation was adopted in July of 1990 and discussion of retroactive application of that time period was left for another day. *See Short*, 908 F.2d at 1389.

Defendants do not contend that plaintiffs' securities fraud claims would be time-barred absent retroactive application of *Ceres*. Although neither party has indicated with any precision what the applicable statute of limitations would be under Illinois law, the Court finds that plaintiffs' claims remain viable under New York's six year statute of limitations, which commences upon the commission of the fraud. The Court concludes that retroactive application of *Ceres* to this action would be inequitable, in that plaintiffs may have re-

74

lied on New York's six year statute of limitations and could not reasonably have anticipated this very recent change in the law.

Defendant's motion to dismiss on statute of limitations grounds is denied.

## II. Failure to State a Claim under Section 10(b)

Defendant next argues that plaintiffs have failed to state a claim under Section 10(b) and Rule 10b–5. In addition, defendant submits that plaintiffs have failed to allege fraud with sufficient particularity under Rule 9(b).

▆ In order to state a claim under Section 10(b) and Rule 10b–5, plaintiff must allege that defendant made (1) a false representation or an omission; (2) of a material fact; (3) with scienter; (4) upon which plaintiffs justifiably relied; and (5) that the false representation or omission was the proximate cause of plaintiffs' damages. *Royal American Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1015 (2d Cir.1989). Each of these elements must be pleaded with particularity. *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982).

▆ Defendant argues that plaintiffs did not justifiably rely on the tax opinion and reports on financial projections prepared by Touche. In the Court's view, however, this argument goes to a question of fact, not a question of proper pleading. Plaintiffs each purchased securities based partly upon the opinions and projections of a well-respected accounting firm. Although the PPMs do "bespeak caution," *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986), that does not overcome plaintiffs' fulfillment under the pleading requirements in stating a claim. Justifiable reliance has been properly pleaded. The issue of whether or not plaintiffs were in fact justified in relying on Touche's word in this risky venture is for the trier of fact to determine.

In addition, plaintiffs do not allege that Touche merely gave inaccurate projections and tax opinions. Rather, plaintiffs also indicate that defendant vouched for the good judgment of the partners. This allegation informs the Court that Touche went beyond giving typical accounting advice. The Court finds that plaintiffs have set forth a claim under Section 10(b).

## III. Failure to Plead Fraud with Particularity

Defendant argues next that plaintiffs have failed to plead fraud with particularity, requiring the dismissal of Count I. Defendant contends that claims of fraud alleged against professionals, such as accountants, require a higher level of specificity, which plaintiffs have failed to meet in this case.

### A. General Fraud Allegations

As Judge Leisure stated in *O'Brien v. Price Waterhouse*, 740 F.Supp. 276, 279 (S.D.N.Y.1990), "courts have required complaints brought under the federal securities laws to identify the allegedly fraudulent statements and the time, place, and content of those statements to survive a motion pursuant to Rule 9(b)." The court went on to note, however, that "[t]he Second Circuit has held that 'reference to an offering memorandum satisfies 9(b)'s requirement of identifying time, place, speaker, and content of representation where ... defendants are insiders or affiliates participating in the offering of securities. *Quaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir.1990)." 740 F.Supp. at 279. In the instant case, plaintiffs have sufficiently identified the allegedly fraudulent statements as well as time, place and content of those statements to survive a Rule 9(b) motion.

### B. Theory of Liability

Defendant also contends that plaintiffs have failed to set forth with particularity whether defendant is being sued as an aider and abettor or as a primary wrongdoer.[2] The Court agrees.

---

**2.** In any event, defendant contends that plaintiffs have failed to allege with the requisite specificity the misrepresentation or omission ele-

ment crucial to both a primary and secondary claim. First, Touche is alleged to have failed to disclose "the true facts concerning the invest-

Plaintiffs allege that Touche "participated in, or aided and abetted, the promoters of the Limited Partnerships in fraudulent schemes in connection with the sale of securities." (Complaint ¶ 23). The elements of aider and abettor liability are "(1) the existence of a primary fraud; (2) knowledge by the aider and abettor of that fraud; and (3) substantial assistance of the fraud." *The Limited, Inc. v. McCrory Corp.*, 645 F.Supp. 1038, 1043 n. 11 (S.D.N.Y.1986). Defendant argues that these elements have not been alleged. Plaintiffs suggest, however, that the complaint alleges that Touche may be liable both as an aider and abettor and as a primary actor. Plaintiffs state, "It is clear from the Complaint that, as alleged, Touche either reviewed the underlying documents, as it was *required* to do by Treasury regulations—in which case it had a direct knowledge of (or was reckless as to) the alleged fraud, or it failed to review the documents—in which case its statements as to its 'review' are simply false." (Plaintiffs' Mem. in Opp. at 22–23).

The Court finds that the Complaint fails to indicate under which theory of liability defendant is being sued. Plaintiffs may amend their complaint in order to state with clarity whether defendant is alleged to be a primary wrongdoer or an aider and abettor.

## C. Duty to Disclose

■ Touche contends as well that it had no duty to disclose anything material to the plaintiffs because there was no fiduciary relationship nor did defendant possess information not readily available to plaintiffs. The Court interprets this argument to mean that Touche can put its name on a PPM and give a glowing recommendation and positive projections to investors, but that it has no duty to tell the investors anything. Defendant charges plaintiffs

with a responsibility to do its own independent investigation into the backgrounds of the promoters in order to confirm Touche's statements. If this were so, it is difficult to understand what purpose the PPMs would serve. The Court rejects defendant's position on this point.

## D. Scienter

■ Finally, defendant argues that plaintiffs' allegations of scienter are conclusory and without a factual basis. The Second Circuit has held that plaintiff must "specifically plead those events" that "give rise to a strong inference" that defendant had knowledge of the alleged falsity. *Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir. 1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

Plaintiffs counter, however, that Touche acted recklessly in failing to discover the underlying facts and that such recklessness is sufficient to establish scienter "where the plaintiffs are third parties whose reliance upon the accountant's audit or opinion letter is reasonably foreseeable." *Axel Johnson, Inc. v. Arthur Andersen & Co.*, 738 F.Supp. 772, 774 (S.D.N.Y.1990). Further, it has been held that "[a]llegations of scienter are not subjected to the more exacting consideration applied to the other components of fraud. They are sufficient where ... the allegations lie peculiarly within the opposing party's knowledge and are accompanied by information that raises a strong inference of fraud." *Quaknine v. MacFarlane*, Fed.Sec.L.Rep. (CCH) ¶ 94,951 at 95,288 (S.D.N.Y.1988). In the instant case, plaintiffs allege that Touche had knowledge of the underlying facts due to its duty to conduct a review of those facts and of the extreme unreasonableness of the assumptions upon which its predictions were based. The Court finds this contention sufficient for pleading purposes

---

ments," such as the promoters' inclusion on an IRS watch list of likely promoters of abusive tax shelters, and the fact that a similar 1984 nursery deal promoted by an affiliate of the promoters was under investigation by the IRS. Defendant submits that those facts are disclosed in the PPMs under the section labeled "Tax Shelter

Risks." In any event, plaintiffs have not alleged that the IRS disallowed their tax deductions. Plaintiffs have advised the Court, however, that since the filing of the complaint, the IRS has in fact disallowed all of their tax deductions. They request an opportunity to amend the complaint to add this fact. This request is granted.

and finds that plaintiffs have sufficiently pleaded scienter.

Defendant's motion to dismiss plaintiff's securities fraud claim for failure to plead aider and abettor liability is granted. The other grounds upon which defendant moves to dismiss the claim are denied. Plaintiffs may amend their complaint to properly plead under which theory of liability defendant is being sued within thirty days of the issuance of this decision.

## IV. RICO

Defendant next seeks to dismiss plaintiffs' RICO claim. In order to plead a RICO violation, plaintiffs must allege that Touche conducted or participated in the conduct of an enterprise through a pattern of racketeering activity or that it conspired to do so. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

### A. *Mail and Wire Fraud*

■ Defendant first contends that plaintiffs have failed to plead mail or wire fraud.

In order to plead mail fraud as a predicate act, "plaintiffs must plead with particularity 'who caused what to be mailed when and how that mailing furthered the fraudulent scheme.'" (Defendant's Mem. at 25) (quoting *Balbanos v. North American Investment Group, Ltd.*, 684 F.Supp. 503, 506 (N.D.Ill.1988)). Plaintiffs allege that Touche and the partnerships' promoters "intentionally used or caused to be used mail delivery by the United States Postal Service or wire communications in interstate commerce, in furtherance of the fraudulent scheme or the aiding and abetting thereof, two or more times." (Complaint ¶ 28). In addition, plaintiffs allege that "[t]he uses of the mails included, but were not limited to, transmittal of the [PPM], including the [Touche] documents, in 1985." (Complaint ¶ 28).

Defendant argues that these allegations fail for several reasons. First, plaintiffs have failed to plead scienter pursuant to Rule 9(b). This argument, however, has been rejected by the Court in relation to

the securities fraud claim. Next, defendants argue that plaintiffs do not plead the particular elements of a mail or wire fraud claim with particularity. The Court agrees with defendant that plaintiffs have failed to plead any predicate acts whatsoever in their complaint. Plaintiffs therefore have not alleged mail or wire fraud.

### B. *Pattern of Racketeering*

■ In order to set forth a pattern of racketeering, plaintiffs must identify at least two separate acts of racketeering. In addition, a pattern of racketeering consists of two elements: continuity and relatedness. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989) ("must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.") (emphasis in original). Plaintiffs allege only that defendant was involved with the tax opinions and reports on projections contained in the PPMs for the two Limited Partnerships. Plaintiffs do not allege any threat of continuing criminal activity.

The Court finds that plaintiffs have failed to allege a pattern of racketeering activity.

### C. *RICO Conspiracy*

Finally, defendant submits that plaintiffs have failed to allege a conspiracy under 18 U.S.C. § 1962(d), because there are no particular facts set forth showing the conspiracy. Plaintiffs' only allegation of conspiracy is that "Touche ... participated in the conduct of the enterprises' affairs through a pattern of racketeering activity, or conspired to do so." (Complaint ¶ 31). Having found that plaintiff has failed to set forth an allegation of wire or mail fraud and has failed to allege a pattern of racketeering, plaintiffs are found to have failed to allege a RICO conspiracy.

Plaintiffs' RICO claim is dismissed. The Court declines to permit plaintiffs to replead this claim, finding that such an exercise would be fruitless. At oral argument on the motion, plaintiffs' counsel was asked

whether the RICO claim could be more adequately pleaded. Plaintiffs' counsel was unable to answer in the affirmative. Leave to replead the RICO claim therefore is denied.

## V. Negligent Misrepresentation

■ Defendant argues that plaintiffs' negligent misrepresentation claim should be dismissed for failure to state a claim.

Plaintiffs allege that Touche knew or should have known "that plaintiffs and other investors" would rely on the tax opinions and the reports or projections when deciding to invest. (Complaint ¶¶ 36, 37). Further, Touche is alleged to owe a duty to use due care in communicating information that others would rely upon in conducting their business affairs, and that Touche negligently breached that duty.

Defendant urges the Court to apply New York law to this claim and follow the strict standard for negligent misrepresentation claims against accountants set forth in *Ultramares Corp. v. Touche, Niven & Co.*, 255 N.Y. 170, 174 N.E. 441 (1931). *Ultramares* held that an accountant's duty of care is limited to those in privity with him. Absent privity, there can be no recovery against an accounting firm even though the acts complained of amounted to negligence or gross negligence.

Plaintiffs contend that the applicable law is the law of the state where the tort occurred, here where each plaintiff made his investment. Most of the plaintiffs are not from New York, but are from New Jersey, Wisconsin, California and Florida. The laws of those states in particular do not require that there be privity in order for a claim of negligent misrepresentation to be sustained. *See, e.g., First Florida Bank, N.A. v. Max Mitchell & Co.*, 558 So.2d 9 (Fla.1990); *International Mortgage Co. v. John P. Butler Accountancy Corp.*, 177 Cal.App.3d 806, 223 Cal.Rptr. 218 (1986); *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 461 A.2d 138 (1983); *Citizens State Bank v. Timm, Schmidt & Co.*, 113 Wis.2d 376, 388, 335 N.W.2d 361, 367 (1983).

Defendant does not address this choice of law issue in any detail, but states simply that New York law should apply since New York is the state with the most significant contacts. *See* Defendant's Reply Mem. at 27. Based on New York law, then, defendant argues that it cannot be held liable to plaintiffs for negligent misrepresentation.

The New York Court of Appeals set forth the criteria for liability under negligent misrepresentation in *Credit Alliance Corp. v. Andersen & Co.*, 65 N.Y.2d 536, 551, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985): "(1) awareness that the reports were to be used for a particular purpose of purposes; (2) reliance by a known party or parties in furtherance of that purpose; and (3) some conduct by the defendants linking them to the party or parties and evincing defendants' understanding of their reliance." *Ossining Union Free School District v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 541 N.Y.S.2d 335, 339, 539 N.E.2d 91, 95 (1989). Despite defendant's argument otherwise, it is clear that New York does not absolutely bar negligent misrepresentation claims against accountants. *See Shamrock Associates v. Sloane*, 738 F.Supp. 109, 118 (S.D.N.Y.1990) (citing *Ossining*, 541 N.Y.S.2d at 338, 539 N.E.2d at 94).

The Court finds that the instant case is distinguishable from *Ultramares*. In *Ultramares* the court was concerned with exposing accountants to liability to an "indeterminate class of persons who, presently or in the future, might ... rel[y] on a negligently inaccurate audit." 255 N.Y. 170, 174 N.E. 441, 446. In the instant case, on the other hand, the report at issue was not disseminated to the public at large. Rather, it was distributed to a select group of qualified investors. In addition, plaintiffs allege that defendant solicited some of them to invest in the Limited Partnerships. (Complaint ¶ 20). Plaintiffs have met the pleading requirements for a claim of negligent misrepresentation. Defendant's motion to dismiss this claim is denied.

## CONCLUSION

Defendant's motion to dismiss plaintiffs' complaint is granted in part and denied in

part. Plaintiffs' securities fraud claim is dismissed on the ground that it fails to plead with particularity under what theory of liability defendant is being sued. Plaintiffs may amend this claim within thirty days of the issuance of this decision. Defendant's motion to dismiss the RICO claim is granted, and leave to re-plead is denied. Defendant's motion to dismiss the negligent misrepresentation claim is denied.

Discovery is to be completed by November 15, 1991, and the Court will refer discovery to a Magistrate Judge. The parties are to appear for a pre-trial conference in Courtroom 228 at 10:00 A.M. on Monday, November 18, 1991.

SO ORDERED.